# UNITED STATES DISTRICT COURT
## District of Kansas
(Wichita Docket)

FILED
U.S. District Court
District of Kansas

JAN 1 6 2014

Clerk, U.S. District Court
By /s/ _____ Deputy Clerk

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CASE NO. 14-M-6011-01,02,03-KMH

PATRICK C. HAINS,
WYATT LEEDY, and
JOSE RAMON MONTELONGO-
    CASTREJON,

    Defendants.

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### COUNT ONE

**21 U.S.C. §§846 and 841(a)**
**(Conspiracy to Distribute and to Possess with Intent to Distribute)**

Beginning on a date unknown, and continuing through January 14, 2014, the exact dates being unknown to the Grand Jury, in the District of Kansas, and elsewhere, the defendants,

**PATRICK C. HAINS,**

## WYATT LEEDY, and
## JOSE RAMON MONTELONGO-CASTREJON,

knowingly and intentionally conspired together and with one another, to possess with the intent to distribute, and to distribute, a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

### Quantity of Methamphetamine Involved in the Conspiracy

With respect to defendant PATRICK C. HAINS, his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy, charged in Count One, involved 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B)(ii)(viii).

With respect to defendant WYATT LEEDY, his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy, charged in Count One, involved 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B)(ii)(viii).

With respect to defendant JOSE RAMON MONTELONGO-CASTREJON, his conduct as a member of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy, charged

in Count One, involved 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B)(ii)(viii).

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## Count Two

### 18 U.S.C. § 924(c)
### (Possess a Firearm in Furtherance of a Drug Trafficking Crime)

That on or about January 15, 2014, in the District of Kansas, the defendant,

**PATRICK C. HAINS,**

did knowingly possess a firearm, that is, a , in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c)(1).

I further state that I am a Detective of the Wichita Police Department, and that this complaint is based on the following facts:

SEE ACCOMPANYING AFFIDAVIT, WHICH IS INCORPORATED BY

REFERENCE AS THOUGH SET OUT IN FULL HEREIN.

_____
Shek G. Weber
Detective, Wichita Police Department


Sworn to before me and subscribed in my presence this 16th day of January, 2014, at Wichita, Kansas.


Karen M. Humphreys
_____     _____
United States Magistrate Judge              Signature of Judicial Officer

# AFFIDAVIT

I, Shek G. Weber, being duly sworn, would advise the court as follows:

1. Your Affiant is currently assigned as a Detective to the Special Investigations Bureau, Undercover Narcotics Section, of the Wichita Police Department (WPD). In that capacity, affiant received an e-mail drug complaint assigned for follow up on November 14, 2013.

2. A photograph of an individual smoking, what appeared to be, methamphetamine was sent to the Wichita Police Department Facebook page. The person in the photograph was identified as **Wyatt E. Leedy,** who has a lengthy criminal history, some of which involves methamphetamine.

3. Affiant, acting in an undercover capacity, made contact with **Wyatt Leedy**.

4. On December 3, 2013, affiant made contact with **Wyatt Leedy**, and eventually reached an agreement with Mr. Leedy to sell one ounce of methamphetamine to the affiant for $1,200.00.

5. On December 4, 2013 affiant met Mr. Leedy in Wichita, Kansas, at a local business where Mr. Leedy provided a clear zip lock plastic baggie containing a white crystal substance to affiant. The affiant then handed Mr. Leedy twelve (12) one hundred dollar bills under the table. After Mr. Leedy left the business, affiant conducted a field test of the substance inside the baggie which showed a positive result for methamphetamine.

6. On December 10th, 2013, affiant arranged to purchase one ounce of methamphetamine from **Wyatt Leedy for** $1,350.00. Later that day, Mr. Leedy, in the presence of the affiant, placed a phone call to his methamphetamine supplier (at approximately 1446 hours). Affiant drove Mr. Leedy to Quality Granite, 1111 S. West, Wichita, Kansas, where Mr. Leedy told affiant to park behind a building.

7. Mr. Leedy said the supplier was getting the product and affiant observed what appeared to be a male reaching into the driver's area of a blue Jeep. The license plate number on the Jeep was 653EVC. Mr. Leedy contacted this person and came back with one ounce of a white crystal substance packaged in a clear zip lock baggie. Affiant placed the package on a digital scale with Mr. Leedy present. It weighed approx. 28 grams. Affiant then paid Mr. Leedy $1,350.00.

8. Affiant then watched as Mr. Leedy took the money, and walked to the location of the person he had contact with initially. After that, affiant took Mr. Leedy back to the area where affiant originally met Mr. Leedy that day.

9.     Affiant conducted a field test on the white crystal substance in the baggie indicating a positive text for the presence of methamphetamine.

10.    Registration on the blue Jeep, with license plate number 653EVC, revealed that the primary owner was **Patrick Chancy Hains**.

11.    Subpoenaed phone tolls for Mr. Leedy's cellular telephone revealed that the phone call placed on December 10, 2013, at 1446 hours, was to phone number 316-761-5521. A records checked showed Patrick C. Hains has used this phone number since July 25, 2011. Subpoenaed phone tolls for number 316-761-5521 list the customer's name as Chance Hains with an activation date of 6/9/12.

12.    On December 20, 2013, your affiant contacted **Wyatt Leedy** via text messaging to purchase crystal methamphetamine (ICE). Affiant agreed to purchase one ounce of ICE for $1,350.00. Mr. Leedy wanted affiant to pick him up at the address 2121 S. Palisade in Wichita, Kansas. Affiant picked up Mr. Leedy as requested. Mr. Leedy directed affiant to drive to Whiskey Dick's bar at McCormick and Seneca (in Wichita, Kansas) to meet the same supplier as last time.

13.    Affiant arrived in the parking lot with Mr. Leedy who said the supplier would be on his way. Shortly thereafter, a blue Jeep Grand Cherokee, bearing license plate number 653EVC, arrived in the parking lot.

14.    Affiant provided $1,350.00 dollars to Mr. Leedy who then went to the Jeep and got into the front passenger's seat. A short time later, Mr. Leedy returned to affiant's car where he handed affiant a clear zip lock baggie containing what appeared to be crystal methamphetamine. The blue Jeep drove past your affiant, occupied only by the driver, who your affiant recognized from the side profile to be Patrick C. Hains.

15.    Affiant then drove Mr. Leedy back to 2121 S. Palisade. On the way, affiant asked Mr. Leedy about purchasing larger quantities from his supplier, like a pound. When Mr. Leedy got out of the car, he said it would be twenty (meaning $20,000). Affiant then field tested the crystal substance provided by Mr. Leedy, which tested positive for the presence of methamphetamine.

16.    On December 26, 2013, affiant contacted Mr. Leedy about a future ICE purchase. Mr. Leedy replied, "What we talked about???" and "one 20 racks???" Affiant asked Mr. Leedy if his supplier was good for it (one pound of ICE) and he replied, "Yep".

17.    On January 14, 2014 affiant contacted **Wyatt Leedy** via cellular telephone conversation and text regarding the purchase of one pound of methamphetamine/ICE for $20,000.00. Mr. Leedy advised that he would make some phone calls and re-contact

affiant.

18.     Mr. Leedy contacted affiant to advise that everything was in place for the deal and that affiant would need to pick up Mr. Leedy at a Wal-Mart in Wichita, Sedgwick County, Kansas.  Affiant picked up Mr. Leedy who gave affiant different locations within the City of Wichita to drive to while discussing how the deal was going to go down.  Mr. Leedy advised affiant to drive to the Shamrock Bar on West Douglas and to park in a parking lot.  Mr. Leedy wanted to make sure that affiant had the money so I called WPD Detective Jason Miller (who was also acting in an undercover capacity), who was holding the money and had him bring the money to the Shamrock Bar.  Det. Miller arrived and affiant retrieved the money to show Mr. Leedy.  The money was then returned to Det. Miller who then left the area.

19.     Mr. Leedy contacted his supplier and told him that he had seen the money and the supplier advised that the deal was going to take place at a Wal-Mart in Wichita, Sedgwick County, Kansas.

20.     As affiant and Mr. Leedy arrived in the area of 21st and Amidon (Wichita, Kansas), the supplier (later identified as **Patrick "Chance" Hains**) advised that the deal was actually going to take place at the Pelican Point apartments at 2150 N. Meridian in Wichita, Kansas.  Affiant and Mr. Leedy then drove to the apartments with Det. Miller following in a separate vehicle with the money.

21.     Affiant and Mr. Leedy eventually parked in a parking lot of the apartment complex and Mr. Leedy made contact with Patrick "Chance" Hains.  Mr. Hains wanted Mr. Leedy to get the money from Det. Miller, and once he had the money Mr. Hains would give Affiant the ice methamphetamine.  Det. Miller advised that he was not going to give the money to Mr. Leedy without seeing the ice methamphetamine and a short argument ensued about how the deal was going to go down.

22.     Because Mr. Hains refused to show the ice methamphetamine, Det. Miller advised affiant that the deal was off.  Both Det. Miller and affiant started to return to their vehicles.

23.     Mr. Hains then said, "Fuck it" and yelled out "Jose, it's me, let me in so I can get the dope."  At this point a wooden fence door opened on a wooden fence that surrounded a trash dumpster and a Hispanic male exited the wood fence in area.  Mr. Hains then walked into the fenced-in area and returned with a white sack.  Mr. Hains asked who had the money and Mr. Leedy pointed at Det. Miller.  Mr. Hains stated, to Det. Miller, that they would do the deal in Det. Miller's vehicle.

24.     Mr. Hains got into the car on the front passenger side, while Det. Miller took the driver's seat.  Det. Miller showed Mr. Hains the money. Mr. Hains removed a folded box

3

cutter knife and flipped it open. Mr. Hains took a black covered container and sliced open the side revealing, what Det. Miller recognized to be, ice methamphetamine. Det. Miller advised that it looks good, after which Mr. Hains pushed the ice methamphetamine towards the center console and took the $20,000.00 cash from between Det. Miller's right leg and the center console. Mr. Hains then got out of the car.

25. Mr. Hains and the Hispanic male, who had walked out of the fenced-in area earlier, walked away with a third unknown individual.

26. Mr. Leedy was placed under arrest. WPD officers attempted to arrest Mr. Hains and the Hispanic male, who took off running.

27. WPD Det. Casey Slaughter eventually found Mr. Hains as he was walking up the stairs to an apartment. Det. Slaughter saw Mr. Hains throw something on the stair landing, after which Mr. Hains was taken into custody and the $20,000.00 was recovered on the stair landing.

28. The crystal methamphetamine (ICE) purchased from Mr. Hains was field tested by affiant. This substance tested positive for the presence of methamphetamine. The container, along with the methamphetamine inside, weighed approximately 568 grams.

29. Det. Miller conducted a post-Miranda interview with Wyatt Leedy who agreed to talk without his lawyer present. Mr. Leedy advised that he had made three (3) drug deals with affiant before this deal. Mr. Leedy advised that he sold affiant an ounce each time. Mr. Leedy advised that the methamphetamine sold during the last two deals came from Mr. Hains. Mr. Leedy advised that since May of 2013, on average, he obtains one ounce of methamphetamine from Mr. Hains at least once a day. Mr. Leedy advised that on two occasions he has obtained five (5) pounds of ice methamphetamine from Mr. Hains and sold it for $50,000.00, each time. Mr. Leedy also admitted that he set up the deal with affiant to purchase one (1) pound of ice methamphetamine for $20,000.00. Mr. Leedy advised that he was getting the pound of methamphetamine from Mr. Hains for $13,500.00 and that he priced the pound to affiant at $20,000.00.

30. Mr. Hains was contacted and asked for consent to search his residence at 539 S. Woodchuck in Wichita, Sedgwick County, Kansas. Mr. Hains advised that he would not give consent to search the residence because he didn't want additional charges. Mr. Hains further advised that he only had two (2) to three (3) ounces of methamphetamine in his residence and also had a gun in his residence even though he was a convicted felon.

31. Affiant knew that Mr. Hains associated and worked with Jose A Gonzalez Jr at Quality Granite. On January 15, 2014, affiant contacted the owners at Quality Granite and learned that **Jose Ramon Montelongo-Castrejon** was good friends, and worked at, Quality Granite with Mr. Hains.

4

32.     Mr. Montelongo-Castrejon fit the description of the Hispanic male with Mr. Hains on January 14, 2014. Mr. Montelongo-Castrejon was transported to the city building for an interview. During the interview, conducted by Detective Padron, Mr. Montelongo-Castrejon admitted to being with Mr. Hains on January 14, 2014, and grabbing a container wrapped in black. Mr. Montelongo-Castrejon admitted that he believed a drug deal was taking place with Mr. Hains. He said he was behind the dumpster area fence when Mr. Hains called his name and retrieved the black wrapped container in a paper sack. Mr. Montelongo-Castrejon said after Mr. Hains got into and out of a truck, the two men walked away together as the police arrived. He admitted that Mr. Hains ran one direction while he ran the other direction.

33.     Det. Miller contacted Westar Energy and learned that Patrick Hains turned on utilities at 539 S. Woodchuck in December of 2013.

34.     On January 15, 2014, a search warrant was executed at 539 S. Woodchuck in Wichita, Kansas. Located behind the front door was a Mossberg 500 'ZMB' 12 gauge shotgun loaded with 6 (six) rounds. Located in a kitchen cabinet above the range were two handguns—one Smith and Wesson .40 caliber black and silver handgun with three magazines, Model #SW40VE and serial #RAX0565; and one Glock 23 .40 caliber with serial #LMY947. Four loaded magazines were also found with two (2) boxes of 9mm ammunition. Located in the master bedroom night stand was a silver with black handle Smith and Wesson model #5906 9 mm handgun with serial #TZJ8844. Located in the master bedroom floor were several boxes of ammunition being, .38 caliber, 380 caliber, 9mm, 7.62 caliber, and .40 caliber. Located in the garage was 9mm and 7.62 caliber ammunition. Located in the master bedroom safe were two large clear zip lock baggies containing crystal methamphetamine (ICE). One baggie contained approx. ninety-three (93) grams and the other approx. seven (7) grams. These items tested positive for the presence of methamphetamine using a field test. Also located in that safe was a clear plastic baggie containing psychedelic mushrooms along with $6,500.00. In the master bedroom on the floor was a small baggie containing a small amount of crystal methamphetamine. Located in a kitchen cabinet were several glass methamphetamine smoking pipes and several zip lock baggies. Located on the laundry room floor was a Mossberg shotgun box containing fourteen (14) 12 gauge rounds marked Fiocchi Italy. Also located in the residence of 539 S. Woodchuck were Farmers insurance documents to the name Patrick Hains at the address 539 S. Woodchuck.

35.     Your affiant conducted a criminal history check of Patrick C. Hains. In 2008, Mr. Hains was convicted in Kentucky of receiving stolen property over $300. In 2000, Mr. Hains was convicted in Oklahoma of felony unlawful possession of paraphernalia. In 2005, Mr. Hains was convicted in Oklahoma of felony burglary-second degree. In 2009, Mr. Hains was convicted in Sedgwick County, Kansas, of felony burglary.

36.     Affiant would advise the court that firearms are frequently used and possessed by drug traffickers in order to protect their drugs and money earned from drug trafficking.

Further affiant saith not.

*Shek G. Weber*
Detective Wichita Police Department

Subscribed and sworn to before me on this 16th day of January, 2014.

*Karen M. Humphreys*
United States Magistrate Judge

6